UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF NEW YORK

Dante McNair
  (Petitioner)

v.                                    |   Civil Action No.:_____
                                          Criminal Action No.: 16-CR-666(KMK)

United States of America
  (Respondent)

## NOTICE OF APPEAL WITH MEMORANDUM OF LAW

NOW COMES the Petitioner, Dante McNair, Pro Se, and files the following notice of appeal with supporting memorandum of law pursuant to FRAP R. 3(A)(1) and 4(A)(1)(A), and in support thereof states the following:

## I. PRELIMINARY STATEMENT

Petitioner on or around December of 2019, submitted a motion/brief pursuant to 18 U.S.C. 3582 (For Modification of Sentence) in light of New Supreme Court decision on June 26th, 2019; regarding (U.S. v. Davis) No. 18431, under 18 U.S.C. 924(C)(1)(A) and (3)(B) finding to now be unconstitutionally vague and cannot stand; along with supportive lower court rulings in favor of Petitioner's claims for relief.

The GOVT responded to Petitioner's motion and on around December 18, 2019 with two (2) area's of contention and they were as follows:

1) Petitioner's motion under 3582(C)(2) could not be heard, and should be filed pursuant to 28 U.S.C. Section 2255; and

2) The Supreme Court decision in (U.S. v. Davis) is wholey inapplicable because defendant was not charged with (AND, thus, did not plead to) any crimes in violation of section 924(C). And thus the decision in Davis does not apply to two-level enhancements under U.S.S.G. §2D1.1(b)(1). Citing (U.S. v. Nwainkwo) No. 12-CR-31(VM, 2019 WL 4743823 at 1 (S.D.N.Y. Sept 17, 2019).

On or around January 2020, Petitioner's reply's pursuant to
FRAP Rule 5 addressing correctly the Govt's two main discussion
points such as:

1) Petitioner does cite new changes in his reply brief but also
   notes that recently in (U.S. v. Sainz), No. 18-10310 (9th Cir)
   where Court reveresed the District Court's denial when the
   panel held that a District Court may not sua sponte raise
   (or by pass) a defendant's right to file a §3582(C)(2) motion
   and deny the motion on that ground is a violation of an in-
   dividual's constitutional rights. (AND ALIKE as explained by
   Congress.
   Next, Petitioner's then cites FRAP rules and 28 U.S.C . 2255
   (h)(2) that states if the Court sees fit, Peitioner can file
   a motion if a new claim raised could not have been raised in
   a prior motion; nor presented previously because the issue
   raised was not available at the time of sentencing; also to
   prevent a complete miscarriage of justice that would result
   from allowing a unconstitutional sentence to stand, (and alike)

2) Petitioner counter's the Govt case cited by the Govt in
   (Nwankwo) with multiple case concerning (and not limited to)

A) Court's have recentley decided  that defendant's cannot be
   sentenced outside the "four corners" of the indictment.

B) Court's have recently decided (Supreme Court) that a covered
   offense is determined by the statute of conviction, not "actual
   conduct or relevant conduct," in which the Govt in the fourth
   circuit conceded that for a defendant not charged with an
   offense could not be later enhanced when additional conduct
   not presented for releveant conduct not presented to a jury
   may not be used to enhance a defendant beyond the findings
   of a jury. (AND ALIKE)
   Concluding with a direct statement from Congress when weigh-
   ting in on (Davis), that this new case should avoid stacking
   to create longer (unjustified sentences) by prosecutors.

Incrediabily, <u>after the completion of the briefing process,</u>
the Govt was allowed  to file another response on or around Janu-
ary 10, 2020, now claiming that in hinesight the matter of the
filing did not matter. Then the Govt falsely calims that Petitioner
never addressed the Govt one  (one case cited in Nwakwo). Thus
Petitioner is left to appeal the Court's signed denial  on the very
letter sent to the Court without having the curtosy by FRAP rules
to respond further why Petitioner in indeed due relief based on
(Davis) and other new lower court decisions. (AND ALIKE)

This Motion is timely filed Pursuant to FRAP rules 3(A)(1) and
Rule 4(A)(1)(A).

Of legal constructive notice, pursuant to FRAP rule 3(D)(1)(2)(3)
(in sum) the District clerk must serve notice of appeal by mailing
a copy to each party counsel of record.... the clerk must promptly
send a copy of the notice of appeal and of the docket entries---
and any later docket entries--- to the clerk of the court of appeals
named in the notice.

(PAGE LEFT BLANK ON PURPOSE)

## II.  ARGUMENT(S)/GROUNDS

A detailed, well-reasoned 32-page district court decision holding that a Hobbs Act offense is not a crime of violence was appealed last week by the US Attorney for ND California.

A few months ago, a district court ruled that Hobbs Act robbery was not a crime of violence in the wake of Sessions v Dimaya and US v Davis, because an alternate means of committing the crime was to instill "fear of injury, immediate or future" to the person or property of a victim. Fear of future injury to property does not equate to fear of use of physical force against a person the district court held.

This reasoning, if it spreads, could bring down Hobbs Act offenses as crimes of violence. Apparently, the government fears so because last week, it appealed the decision to the 9th Circuit. This is not necessarily a bad development, because a circuit holding that the Hobbs Act is not a crime of violence would probably force a Supreme Court decision on the issue. US v Chea, 2019 U.S. Dist. LEXIS 177651 (ND Cal., Oct. 2, 2019)

The Second Circuit issues an amended opinion in United States v. Pugh, No. 17-1889-cr, __F.3d__, 2019 WL 6708812 (Dec 10, 2019) ("Pugh II"), a material support to terrorism case. As in the initial opinion   that was discussed in this blog on Sept. 3, 2019   the Circuit affirms the convictions, but vacates consecutive prison sentences (totaling 420 months) as procedurally unreasonable because of the inadequate statement of reasons for the sentences.

The Circuit issued an amended opinion in United States v. Pugh. The initial decision issued on August 29, 2019 (United States v. Pugh, 937 F.3d 108) and was discussed in this blog. See infra, posting of Sept. 3, 2019.

The Amended Opinion reaches the same results as the initial opinion. The Circuit  (1) rules against the defendant on the mari communications privilege, Pugh II, 2019 WL 6708812 at *2-*4 ; (2) finds sufficient evidence of an "attempt" to provide materia support to a foreign terrorist organization (18 U.S.C. § 2339B(a)(1)), id. at *4-*6; and (3) finds sufficient evidence of obstructio and attempted obstruction of an "official proceeding" (18 U.S.C. §§ 1512(c)(1),  (c)(2)), id. at *6-*7 ; but (4) vacates consecuti sentences totaling 420 months' imprisonment because of the inadequacy of the Judge's explanation for the consecutive sentences. Id. at *8-*12.

Factual basis for § 924(c) plea insufficient where proffer showed only that defendant "possessed the gun while simultaneous engaging in [] drug trafficking" and did not establish "specific nexus" between gun and drug-trafficking offense necessary for " furtherance" element

In United States v. Luis Rosario, a summary order, the Circuit vacated a guilty plea to a § 924(c) count, charging Mr. Rosario with possessing a firearm in furtherance of a drug-distribution conspiracy, on the ground that the factual basis for his plea was insufficient. The essential facts are that Mr. Rosario participated in a drug conspiracy for about two months; that he occasiona used a white van during this time frame; and that a gun was later found inside the van. After arrest, Mr. Rosario said that he "carries the gun for protection."

These were the only facts on the record when Mr. Rosario pleaded guilty. But as the Court summarized, "th[is] evidence . . . established only that Rosario possessed the gun while simultaneously engaging in a drug-trafficking conspiracy" and did not show a 'specific nexus' between the gun and the drug-trafficking offense . . . [as] required to support a plea to possession 'in furtherance of' such an offense." Order at 5.

The factual basis was thus insufficient. As the Court reminds us, "a gun may, of course, be possessed for any of a number of purposes, some lawful, others unlawful." Order at 4 (quoting United States v. Chavez, 549 F.3d 119, 130 (2d Cir. 2008)). And 924(c)'s "'in furtherance of' element cannot be satisfied 'by relying on the generalization that any time a drug dealer possesse a gun, that possession is in furtherance, because drug dealers generally use guns to protect themselves and their drugs.'" Id. (quoting United States v. Snow, 462 F.3d 55, 62 (2d Cir. 2006)). Rather, there must be evidence of a "'specific nexus' betwee the charged firearm and the federal drug-trafficking crime." Id.

***

Although the Govt would like for the Court to focus solely on the (Nwankwo) case; however the record provides unrefuted proof that the Court states without proof that;

> "Mr. McNair possessed at least one firearm in connection with the charge of Narcotics conspiracy, so two levels are added pursuant to Section 2D1.(B)(1)," (See Page 13 of the sentencing transcripts)

Furthering of legal construction consequences is that in the Govt's own January 10, 2020 letter to the court, they admit to what Petitioner claimed in both his briefs when the state.

> "In other words, the only reason why the two-level enhancement was appropriate here is because, the defendant was not convicted of a section 924(c) offense."

However, new recent decisions already cited as well as in (U.S. v. Rasario) vacated the 924(c) count/enhancement due to the lack of established "specific nexus" between gun and drug trafficking offenses necessary for in furtherance element." In as much then the Govt's conclusion that; "despite the defendant's supplemental submission, neither the facts nor the law have changed in the defendant's favor and , as a result, the defendant is not entitled to the relief he seeks" is wrong! Period!

Additionally, the Court's are now following the "four corner's" of the indictment, and thus Petitioner was not charged with a 924(c) element or residual clause violation; then the Govt claims pursuant to U.S.S.G. §2D1.1(b)(1) and U.S.S.G. §2k2.4 application note 4, cannot apply here in the Court's denial notice.

Finally thus if the (A) sentence under this guideline is imposed in conjunction with a sentence for an underlying offense, do not apply any specific offense characteristic for possession, brandising use, or discharge, of an explosive or firearm when determine the sentence for the underlying offense, cited in the Govt's final note to the Court is now wholly inconsistent with new case presedent's that changes Petitioner's guideline range and what's more has recieved what amounts to an miscarriage of Justice and cannot stand.

The record proves that Petitioner was not given the opportunity to further address the Govt's last minute claims that, he does not apply under (Davis); when the Court premarturely just signed a denial on the very letter sent in by the Govt. There are numerious cases in favor of " Petitioner"'s request to have the 924(c) unchanged (illegal) enhancement that now supports Petitioner legal claims for relief such as;

1) (U.S. v. Davis), 924(c) vagueness charge, and avoidance of stacking.

2) (U.S. v. Maupin) concerning relevant conduct and language change of the statue itself.

3) (U.S. v. Rasario) need to establish a specific nexus under a furtherance between a gun and narcotics to charge or enhance.

4) (U.S. v. Sainz) the right to file pursuant to 3582(c)

5) (U.S. v. Pugh)

6) The Govt's admission that Petitioner was not charged or proven to have a firearm nor charged pursuant to a 924(c) charge nor proven a gun being used in furtherance of a crime of narcotics.

7) (U.S. v. Molina), error in sentencing guidelines (AND ALIKE)

The Bottom line, Petitioner's claims  for relief is indeed warranted here, and prays this Court will follow other Court's across the Country in favor of Petitioner's claims for relief he seeks here as a matter of new case laws.

## RELIEF REQUESTED

The Petitioner, Dante McNair, Pro Se, asks this honorable court to GRANT this appeal requests based on Supreme Court authority in (Molina = Martinez v. United States), 136 S.Ct. 1338) 1344 (2016) resulting in plain errors by the Court and because of other recent lower Court decisions stemming from (Davis), and, specifically to GRANT a resentencing as a matter of justice and any other of further decisions deemed necessary by this Court.


DATED: _2-3_____, 2020


                                    Respectfully Submitted

                                    _____

                                    Dante Mcnair, Pro Se
                                    Fed No.:
                                    LSCI ALLENWOOD - LOW
                                    P.O. BOX 1000
                                    WHITE DEER, PA 17887

## AFFIDAVIT

I Hereby Certify that the foregoing facts are true and correct to the best of my knowledge and belief under penalty of perjury as per 28 USC Section 1746.

_____
Dante McNair    pro se

## CERTIFICATE OF SERVICE

I Hereby Certify that a copy of the foregoing Petition/Motion was mailed on this ___4th___ day of ___Feb.___, 20 20 by First Class Mail, postage prepaid to:

> AUSUA
> Office of the US Attorney
> Christopher J. Clore
>
> 300 Quarropas Street
>
> White Plains  NY 10601

_____
Dante McNair    pro se

ATTACHMENT(S)

UNITED STATES DISTRICT COURT
FOR THE
SOUTHERN DISTRICT OF NEW YORK

Dante McNair,
      Petitioner

v                                          |   Civil Action No.: _____

                                               Criminal Action No: 16-CR-666 (KMK)

United States of America


MOTION FOR MODIFICATION OF SENTENCE
PURSUANT TO 18 USC 3582
IN LIGHT OF SUPREME COURT DECISION
ON JUNE 24TH 2019; REGARDING
(U.S. V. DAVIS) NO. 18431
UNDER 18 USC 924(c)(1)(A), (3)(B);
FINDING TO NOW BE UNCONSTITUTIONALLY
VAGUE AND CANNOT STAND

NOW COMES Dante McNair, pro se (hereinafter "Petitioner" or "Mr. McNair"), in the above-captioned matter; and hereby requests that this Honorable Court reconsider its previous determination, pursuant to the recent Supreme Court decision in (U.S. v. Davis) No. 18431 (See Attachment #1 - the Ruling and Court Opinion), and reduce the sentence of Mr. McNair; using the same justification and thoughtful consideration of sentencing Petitioner below the Guideline Range to start at Level 27 (and not 29). Thus, the removal of the 2 point enhancement levied against Petitioner at sentencing under Section 2D1.1(b)(1) Firearm in Connection with charge of narcotics conspiracy, now falling under the Residual Clause; is now considered unconstitutionally vague and cannot stand; and must be removed as a matter of law. As for reasons thereof, Mr. McNair respectfully states the following:

I.  BACKGROUND

Petitioner on or around February 6, 2018 plead to Conspiracy to Distribute and Possess with Intent to Distribute Cocaine 21 USC §846; 21 USC §841(b)(1)(B) [Lesser Included Offense] 5 years to 40 years imprisonment/4-years Supervised Release (Class B felony).

Not to be overlooked, Petitioner's release status was impecable as explained to the Court at the time of sentencing (1); such as:

_____

Footnote (1): Petitioner worked a job while on bail (and self-surrendered); with no issues with the probation office and alike. (See Attachment #2 Sentencing transcripts pg 6-7)

1

Arrested October 13, 2016, and released October 14, 2016, on a
$100,000 bond (cosigned by three financially responsible people)
with the following conditions: pretrial supervision; drug
testing/treatment; curfew enforced by electronic monitoring;
reside with mother; refrain from contact with codefendants;
surrender travel documents and make no new applications; and
travel restricted to the SDNY/EDNY. Bail amended on January 24,
2017, to allow the curfew hours to be determined by Pretrial
Services. Bail amended on April 24, 2017, to remove the conditions
of curfew and location monitoring. Bail amended on November 1,
2017, to permit the defendant to reside with his mother at
a new address.

## II. PRELIMINARY STATEMENT

Petitioner files this timely motion pursuant to 18 USC 3582(c)(2); where
the relevant part of the statute states;

The Court may not modify a term of imprisonment once it has been imposed
except that, in the case of a defendant who has been sentenced to a term of
imprisonment based on a sentencing range that has subsequently been lowered
by the Sentencing Commission pursuant to 28 USC 994(0), upon motion of the
defendant, the court may reduce the term of imprisonment, after considering
the factors set forth in Section 3553(A) to the extent that they are applicable,
if such a reduction is consistent with applicable policy statements issued
by the Sentencing Commission.

## III. STATEMENT OF FACTS

Petitioner files this Motion for Reconsideration not only for legal rationale;
but also due to the fact that the major item (topic) that the Court (along
with the Govt.'s admission) Requested and Granted (directed) Petitioner to
receive substance abuse treatment in prison. (See Attachment #2 - Pages 6,
8, 10 and 26 - colloquy of Petitioner's issues and need for rehab).

Petitioner respectfully understands and is extremely greatful  that the
Court sentenced him below the Guideline Range of Level 29 - (Category I) of
87 to 108 months; downwards to 66 months. Accordingly, although Petitioner
was not charged with a 924(c) Court, the record clearly shows that the Court
did in fact enhance Petitioner for a firearm, pursuant to Section 2D1.1(b)(1).
This enhancement by way of the Supreme Court decision in (U.S. v. Davis) is
now illegal and cannot stand! This removal would mean that Petitioner's starting
guideline range would start at Level 27 and not 29. Period.

Mathematically speaking, although not much of a difference in terms of months; it is the second grounds that Petitioner wants to notably address, that would benefit him long-term; when it comes to the best rehabilitation sought by way of the RDAP program that the Court sought (and Granted). Unfortunately, Petitioner does not qualify to take such a great program with a gun enhancement (or charge) attributed to his case (or any defendants' case at Bar).

Petitioner in this Motion prays to simply explain to the Court how the removal of the gun enhancement (now considered unconstitutionally vague), would actually allow Petitioner a few extra months reduction, assuming the Court utilize the same rationale to go below the Guidelines Range of (3) levels from Level 29 Category I; and thus start from Level 27 Category I.

## IV. GROUNDS FOR RELIEF

Again, Petitioner does not file this Motion without first recognizing, how fortunate he feels, that the Court saw fit to variance downward; and for that reason Petitioner feels very blessed for the Reduction Granted by this Court.

Next, if the Court would respectfully reconsider as a matter of new caselaw (U.S. v. Davis), and legally remove the 2-point enhancement to Level 27; which falls to the Guideline Range of 70-87 months; then follow as it did at sentencing with a variance downward 3 levels; that would fall to the Guideline Range of 51-63 months of Level 24. Accordingly, meeting in the middle of that correct Guideline Range of (60) months would put Petitioner at the mandatory minimum of 5-years for the Lesser Included Offense. (2) (See Attachment #2 - Page 21 - the Court explains the minimum Mr. McNair can receive is 60-months).

Finally, Petitioner asks the Court to not lose sight of the fact that Petitioner's Counsel, without question, laid out Petitioner's drinking and drug addiction issues. (3) The Record proves that Petitioner is clearly in need of the RDAP program; yet to receive treatment (that even the Govt. agreed was needed) (See Page 10 of Sentencing Transcripts attached), the gun enhancement must be removed immediately.

## V. CONCLUSION

WHEREFORE, Mr. McNair humbly requests that pursuant to recent Supreme Court ruling making 924(c)(1)(A); (3)(B) - (and enhancements) unconstitutionally

---

Footnote (2): Govt. dismissed Count 2 against Petitioner
            (See Pg. 23 of Sentencing Transcripts)
        (3): See Petitioner's PSR Report Pg/82 and 116; items of issues

vague in (U.S. v. Davis), No. 18431; thus changing Petitioner's Guidelines (and if the Court were to adopt its same rationale and start at Level 27 and not Level 29; minus 3 Levels downward departure), Petitioner would greatfully be reduced (6) months downward from (66) months the Court senetenced Petitioner to, to 60 months. Of even greater importance, with the removal of the firearm enhancement would offer Petitioner with an even better (if not equal to) blessing, by allowing Petitioner to qualify for the much needed RDAP--substance recovery program. Petitioner prays this Court will Grant this Motion on both Grounds of specific relief sought and further relief deemed proper and necessary in the Interest of Justice.

Dated: 11/29/19

Respectfully Submitted,

Dante McNair
Fed. No. # 78214-054
LSCI Allenwood LOW
PO BOX 1000
White Deer, PA 17887

UNITED STATES DISTRICT COURT
FOR THE
SOUTHERN DISTRICT OF NEW YORK

Dante McNair
(petitioner)

v.

Civil Action No.:_____
Criminal Action No.: 16-CR-666(KMK)

United States of America
(respondent)

MOTION PURSUANT TO FRAP RULE"5" REPLY AND ANSWER PETITIONER'S
RESPONSE TO THE GOVT'S ANSWER DATED DECEMBER 18th, 2019 IN OPPOSITION
TO PETITIONER'S 3582(C) MOTION FOR RELIEF

NOW COMES, Dante McNair, Pro Se, Petitioner's response to the Govt's opposition answer, pursuant to FRAP Rule "5" Petitioner has the right (legal) to reply; and as for reasons thereof, Petitioner (McNair) respectfully states as follows:

Petitioner responses specifically to the Govt's claims and supposed applicable laws and discussion notification to the Court challenging the Govt's position while providing supportive case law (and ALIKE) in favor of Petitioner's claims/grounds for relief.

A) Applicable Law; (In opposition of the Govt's claims)

The Govt (in its answer to the court) takes a very narrow viewpoint when determining Petitioner's filing pursuant to a 3582(c) filing instead of under Title 28 U.S.C Section 2255.

First the Govt states falsely when it states, Petitioner does not cite "No Amendments to the Guidelines" when suggesting that Petitioner motion is best served under §2255(A). As recent as August 12, 2019 in (U.S. v. Sainz) No. 18-10310 (9th Cir.), the Court reversed the

the District Court's denial of a motion for a sentence reduction under 18 U.S.C. §3582(C)(2) and remanding for further proceedings when the Panel held that, a District Court may NOT sua sponte raise (or by pass) a defendant's right to file a § 3582(C)(2) motion and deny the motion on that ground is a violation of an indivduals constitutional rights.

Rather than having the Parole Commission review every Federal Sentence focused only on an offender's rehabilitation. <u>Congress decided that § 3582(c) could and would enable courts to decide, in individual cases, if "there is a justification for reducing a term of imprisonment."</u> Id. at 56

<u>Congress intended for the situations listed in §3582(c) to act as "safety valves for modification of sentences," id at 121, that enabled sentence reductions when justified by various factors that previously could have been addressed through the now abolished parole system.</u> This particular safety valve would "assure the availility of specific review and reduction to a term of imprisonment for 'extraordinary and compelling reasons" and [would allow courts] to respond to changes in the guidelines." Id noting that this approach would keep "the sentencing power in the judicary where it belongs" rather than with a federal parole board, the statute permitted "later review of sentences in particularly compelling situations" Id. (emphasis added.)

<u>Congress thus intended to give federal sentencing courts an equitable power that would be employed on an individualized basis to correct fundamentally unfair sentences.</u> And there is no indication that Congress limited the safety valve of §3582(c)(1)(A) to medical or elderly release; if extraordinary and compelling circumstances were present, they could be used to "justiy a reduction of an unusually long sentence." S. Rep. No. 98-225 at 55 56

Turning next to the issue of correctness of when an individual could or should file pursuant to 2255 statute. Petitioner has no problem refiling his motion under the 2255 statue that the Govt suggest if it so pleases the Court. The Rules pursuant to 28 U.S.C. 2255; does address that an individual can file even past the one (1) year statue of limitations; when or on the grounds that he is "actually innocent" of a particular charge (or enhancement illegally derived) and in the interest of brevity and judicial economy, when a correction of an illegal sentence must be further adjudicated such as:

1) To prevent a complete miscarriage of Justice that would result from allowing a unconstitutional sentence to stand (U.S. v. Cabey) 429 F.3d 93 (2005) (Also see), (U.S. Maybeck) 23 F.3d 888 (1994), (U.S. v. Mikalajunas) 186 F.3d 490, 495 (1999)

2) A new claim raised could not have been raised in a prior motion; nor presented previously because the issue raised was not available at the time of sentencing; ((2255)(h)(2))

3) A change in the law that directly effect the guideline range of his sentence or incorrectly created resulting in an improper classification (U.S. v. Whitley), 737 F.App x 147, 148-49 (4th Cir. 2018); (Also see) (U.S. v. McCollum),885 F.3d 300, 307-09 (2018); or

4) Newly discovered evidence that if proven and viewed in the light of the evidence as a whole would be sufficent to establish by clear and convincing evidence; that no reasonable fact finder would have found the movant guilty of the offense.

3

B). Discussion:

The Govt is correct here that Petitioner was not charged with a 924(c) crime of violence yet was enhanced by 2 points (levels) incorrectly. What the Govt fails to recognize is the opinion cited by Justice Gorsuch that states; "In our constitutional order, a vague law is no law at all." Furthering, the way the 924(c) statue is being used to stack longer sentences, that even the Govt admits that the statue language (Also while using to enhance those not directly charged with a 924(c) offense) provides no reliable way to determine which offense qualify and cannot be squared with the statues text, context, and history of the 924(c) statue. Concluding with; "were we to adopt the Govt's claims of usage for the 924(c)(3)(B) (Along with unfounded or outside of the Indictment charges) we would be effectively stepping outside our rule as judges and writing a new law rather, than applying the one Congress adopted." Such an opinion by many other courts is consistant with recent court findings to stay within the four corner's of the indictment to sentence defendant's.

A super majority of all federal judges are following what was alleged in "The Four Corners" of the indictment (some indictments did not contain any drug quantity). Here's what the federal judge in my case expressed in part:
"I have previously concluded that the offense as charged in the indictment, and not actual conduct, controls the question of eligibility under the First Step Act. See, e.g., United States v. Davis, No. 4:92-CR-4013-WS/CAS (ECF No. 823). My conclusion is in line with those reached by many courts. See, e.g., United States v. Shaw, No. 02-CR-162, 2019 WL 2477089, at *4(W.D. Wisc. June 13, 2019)("I agree with the reasoning of those courts that have concluded that eligibility under the First Step Act is determined by looking at the statute of conviction, not the defendant's conduct."): United States v. Stone, No. 1:96-CR-403, 2019 2475750, at *3 (N.D. Ohio Jun 13, 2019)("When drug quantity is not both charged in the indictment and submitted to the jury as part of the jury instructions, the statutory maximum under 841(b) must be determined without reference to a specific drug quantity."); United States v. Martinez, No. 04-CR-48-20

4

(FSR), 2019 WL 2433660, at *3(S.D.N.Y. May 24, 2019)("This Court... concludes that the phrase 'violation of a Federal criminal statute' refers to the amount charged in the indictment upon which Martinez was convicted, not the amount attributed to him by judicial finding."); United States v. Rose, __F. Supp. 3d__, 2019 WL 2314479, at *3 (S.D.N.Y. May 24, 2019)(citing cases); United States v. Boulding, __F. Supp. 3d__, 2019 WL 2135494, at *4 (W.D. Mich. May 16, 2019)(explaining that "eligibility under the language of the First Step Act turns on a simple, categorical question:  Namely, whether a defendant's offense of conviction was a crack cocaine offense affected by the Fair Sentencing Act.  If so, the defendant is categorically eligible for consideration regardless of actual quantities.  The particular quantities affect only the Court's discretionary call on whether to grant a reduction in sentence ."). There is limited case law to the contrary.

Of great legal consequences, in (U.S. v. Maupin) No. 19-6817; speaks to what the Supreme Court makes clear that, a covered offense is determined by the Statute of conviction, not "actual conduct" or relevant conduct". This ruling the Govt conceded to in the Fourth Circuit (See United States Motion to Remand, (E.C.F. No.26).Thus if and since Petitioner was never charged to a violation pursuant to a 924(c) violation; one would conclude that Petitioner was simply enhanced under what would be relevant conduct to a crime. If such is the case, then the Court's have decided that relevant conduct not presented to a jury may not be used to enhance a defendant beyond the findings of a jury (See Rosales - Mireles v. U.S. 138 S.Ct. No. 1897 (2018); Also, U.S. v. Antonucci, 667 Fed. Appx 121, 2016 U.S. App. Lexis 11396).

Subsequently the Govt's enhancement being illegal would mean that Petitioner was sentenced on a calculation of applicable guideline range used that was in error. Such is the case, that on April 20, 2016 in (Molina - Martinez v. U.S.) 136, S.Ct 1338, 1344 the Court determined that the district Court had errored and should have sentenced the defendant to a lower guideline range because the Court found that a sentencing procedure which begins with an incorrectly calculated guideline range level is infected with "Plain" error

5

and requires resentencing even where there has been failure to object (By way of plea) to the Court's guideline calculation. (In further support also see.... (Haskell v. Superintendent Green SCI, 2017 BL 266640 3rd Cir. No. 15-3427 (2017); Harris v. U.S., No. 17-3341 (3rd Cir.) (2018).

Finally, inherently pursuant to (U.S. v. Davis) No. 18431; similar to Petitioner's claims in (Davis) Petitioner cites that his 5th amendment  rights  were violated failure of correct due process in Petitioner's motion his constitutional claims of violation is interwoven throughout his brief for such relief; that the Govt conviantly seems to avoid in their answer response. Unfortunately, for the Govt the laws have changed in favor of defendant's where they simply cannot just state (as in their answered brief) "the two-level enhancement was properly applied and defendant is not entitled to the relief he seeks."

The (Davis) case is about how the Govt is misapplying the 924(c) charge and vagueness of the language. Period! The belief that they can avoid charging someone of a violation; then create an end-around an enhance an individual upward (under) relevant conduct of a crime or outside of an actual covered offense, by simply stating so is now inconsistent was case law (Supreme Court) presedent rulings. The Govt cannot have it all ways, when it suits them. Period!

Petitioner was given an unproven, uncharged, uncovered offense violation based on what seems to be relevant "supposed" conduct; that is now considered illegal when not presented to a jury of his peers. Pursuant to Davis; since Petitioner recieved what then would be a 2 level enhancement (non-charge) would mean he would fall under the 924(C)(3)(B) residual clause; thus would conclude cannot stand

6

based on the unconstituionality of vagueness determined by the Highest Court in the land of America.

   Wherefore, DanteMcNair, Pro Se, Petitioner, respectfully asks this Honorable Court to  <u>GRANT</u> Petitioner's Motion for Relief and issue a resentencing; pursuant to (U.S. v. Davis) 18431, and for the following reasons: (AND ALIKE)

   1) Based on recent 9th Cir. Decision im (<u>U.S. v. Sainz</u>) No. 17-1030; stating that the a district court "<u>may not</u>" sua sponte raise (or by pass) a defendant's rights to file a §3582(C)(2) motion and deny the motion on that ground (because the Govt simply asks the Court to)  is a violation of an individual's constitutional rights.

   2) Congress recently decided that 3582(C) could and would enable courts to decide in indivdual cases, if there is a justification for reducing a term of imprisonment to act as a safety valve for modification of sentences.

   3) A super majority of all Federal Judges are now following what was alleged in the 'Four Corners' of the indictment concept in favor of defendant's harshly or illegaly sentenced.

   4) Petitioner was given (when not charged) an enhancement of (2) levels for a gun violation under relevant conduct that is now deemed illegal when not presented before a jury of his peers. Period!

Congress sought out to avoid **stacking** to create longer (unjustified) sentences created by prosecuter's and thus in (Davis) the Supreme Court determined a vague law is no law at all! Petitioner; granted was not charged with a 924(c) violation... However, was

7

enhanced as if he recieved a 924(C)(2)(B) charge which falls under the residual clause and cannot stand. Petitioner addresses each claim proffered by the Govt proven without a doubt that, the laws are in favor of Petitioner's claims for relief, and requests that the court GRANT Petitioner's motion for Resentencing to Reverse a Harmful Error of the 2 level Enhancement, before the Court; to correct a miscarriage of Justice, and for any other relief deemed necessary and appropriate in the Interest of Justice.

DATED: _12-30-19_____

Respectfully Submitted,

_Dante L_____

Dante McNair, Pro Se
Fed No.: 78214-054
LSCI Allenwood - LOW
P.O. Box 1000
White Deer, PA 17887

8

## AFFIDAVIT

I Hereby Certify that the foregoing facts are true and correct
to the best of my knowledge and belief under penalty of perjury as
per 28 USC Section 1746.

*Dante* pro se

## CERTIFICATE OF SERVICE

I Hereby Certify that a copy of the foregoing Petition/Motion was
mailed on this ___1st___ day of __Jan__ 2020, by First Class Mail,
postage prepaid to:


AUSUA
Office of the US ATTORNEY
Christopher J. Clore
300 Quarropas Street
White Plains NY 10601


*Dante*
Dante McNair Pro Se

9

12/23/2019 

**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

*United States District Courthouse*
*300 Quarropas Street*
*White Plains, New York 10601*

December 18, 2019

**BY ECF**
The Honorable Kenneth M. Karas
United States District Judge
Southern District of New York
United States Courthouse
300 Quarropas Street
White Plains, New York 10601

   Re: <u>United States</u> v. <u>Dante McNair</u>,
     16 Cr. 666 (KMK)

Dear Judge Karas:

The Government respectfully writes in opposition to defendant Dante McNair's (the "defendant") motion to reduce his sentence, pursuant to Title 18, United States Code, Section 3582(c)(2). As set forth below, the defendant's motion should be denied.

   A. Background

On or about October 13, 2016, the defendant, alongside multiple co-defendants, was charged in a three-count indictment (the "Indictment"), in connection with the defendant's participation in a large-scale and highly profitable drug trafficking organization (the "DTO") responsible for distributing wholesale quantities of cocaine in and around Poughkeepsie, New York. (*See* Presentence Investigation Report ("PSR"), dkt. no. 141, at ¶¶ 1, 22-27.) The Indictment charged the defendant in two counts. Count One charged the defendant with conspiring to distribute and possess with the intent to distribute five kilograms or more of mixtures and substances containing a detectable amount of cocaine, in violation of Title 21, United States Code, Section 846. Count Two charged the defendant with promotional money laundering in connection with his participation in the narcotics conspiracy, in violation of Title 18, United States Code, Section 1956. (PSR at ¶¶ 2-3.)

On or about October 12, 2017, the defendant pled guilty pursuant to a plea agreement (the "Plea Agreement") to the lesser included offense of Count One. Pursuant to the Plea Agreement, the parties stipulated that the total offense level (assuming acceptance of responsibility) for Count One was 29. (PSR ¶ at ¶ 7.) The total offense level was based, in part, on a two-level increase pursuant to United States Sentencing Guidelines ("U.S.S.G.") Section 2D1.1(b)(1), because the defendant possessed a firearm. (*Id.*) The parties also agreed that the defendant was in criminal history category one and that, as a result, the applicable Guidelines

range for his crimes was 87 to 108 months' imprisonment, with a mandatory minimum term of 60 months' imprisonment. (*Id.*)

The Probation Department ("Probation") determined that the defendant was in criminal history category two, because the defendant committed the instant offense while under a term of probation. (PSR at ¶ 55-57.) Accordingly, Probation calculated a Guidelines range of 97 to 121 months. (PSR at ¶ 99.)

On or about February 6, 2018, the Court held a sentencing. The Court agreed with Probation's Guidelines calculation and determined that the applicable Guidelines range was 97 to 121 months' imprisonment, with a mandatory minimum term of 60 months. Nevertheless, the Court ordered that the defendant serve a below-Guidelines sentence of 66 months' imprisonment to be followed by four years' supervised release. The defendant's projected release date is March 22, 2023.

B.   Applicable Law

The defendant characterizes his motion as a motion for a sentence modification pursuant to Title 18, United States Code, 3582(c)(2), despite the fact that he points to no amendments to the Guidelines. Indeed, there are none that would have any effect on the Court's sentence in this case. Instead, the motion is more accurately characterized as a motion to vacate, set aside, or correct his sentence pursuant to Title 28, United States Code, Section 2255.

28 U.S.C. § 2255(a) permits a federal prisoner to "move the court which imposed the sentence to vacate, set aside or correct the sentence" on "the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack." *Id.* "Because collateral challenges are 'in tension with society's strong interest in the finality of criminal convictions, the courts have established rules that make it more difficult for a defendant to upset a conviction by collateral, as opposed to direct, attack.'" *Yick Man Mui* v. *United States*, 614 F.3d 50, 53 (2d Cir. 2010) (quoting *Ciak* v. *United States*, 59 F.3d 296, 301 (2d Cir. 1995)). To prevail on a collateral attack, a defendant must demonstrate "constitutional error . . . or an error of law or fact that constitutes 'a fundamental defect which inherently results in a complete miscarriage of justice.'" *United States* v. *Bokun*, 73 F.3d 8, 12 (2d Cir. 1995) (quoting *Hill* v. *United States*, 368 U.S. 424, 428 (1962)).

As discussed below, the defendant has failed to demonstrate any error, let alone a constitutional error or error of law or fact, that would entitle him to be re-sentenced.

C.   Discussion

The Supreme Court's decision in *United States v. Davis* is wholly inapplicable here. In *Davis*, the Supreme Court determined that Title 18, United States Code, Section 924(c)(3)(B), the so-called residual clause which defines a crime of violence, was unconstitutionally vague. Here, the defendant was not charged with (and, thus, did not plead to) *any* crimes in violation of

12/23/2019

Section 924(c). And the decision in *Davis* does not apply to two-level enhancements under U.S.S.G. § 2D1.1(b)(1). *See United States v. Nwankwo*, No. 12 Cr. 31 (VM), 2019 WL 4743823 at *1 (S.D.N.Y. Sept. 17, 2019) ("In United States v. Davis, the Supreme Court held that the term 'crime of violence' is unconstitutionally vague when defined to cover a felony 'that by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense.' See 139 S. Ct. at 2324, 2336. This holding does not affect Nwankwo's sentence, because Section 2D1.1(b)(1) does not use or otherwise rely upon the term 'crime of violence.'").

Simply put, the two-level enhancement pursuant to U.S.S.G. § 2D1.1(b)(1) was properly applied here and is unaffected by the Supreme Court's ruling in *Davis*. Accordingly, the defendant is not entitled to the relief he seeks, and his motion should be denied.

Respectfully submitted,

GEOFFREY S. BERMAN
United States Attorney

by:    /s/ Christopher J. Clore
Christopher J. Clore
Assistant United States Attorney
(212) 637-1063

cc:    Defendant Dante McNair (*by mail*)

U.S. Department of Justice

*United States Attorney*
*Southern District of New York*

*United States District Courthouse*
*300 Quarropas Street*
*White Plains, New York 10601*

January 10, 2020

**MEMO ENDORSED**

**BY ECF**
The Honorable Kenneth M. Karas
United States District Judge
Southern District of New York
United States Courthouse
300 Quarropas Street
White Plains, New York 10601

Re:     <u>United States</u> v. <u>Dante McNair</u>,
        16 Cr. 666 (KMK)

Dear Judge Karas:

     The Government respectfully writes in response to defendant Dante McNair's (the "defendant") supplemental submission filed on January 2, 2020 (the "Supplemental Submission") in further support of his motion to reduce his sentence, pursuant to Title 18, United States Code, Section 3582(c)(2). As set forth below and in the Government's initial response, dated December 18, 2019, the defendant's motion should be denied – whether filed as a motion pursuant to Section 3582(c)(2), Section 2255, or otherwise.

     The defendant raises no new arguments in the Supplemental Submission. Nor does he even attempt to respond to the case law cited by the Government that is not only directly on point, but also completely refutes his claim. In short, the defendant was not charged with violating Title 18, United States Code, Section 924(c), and, thus, the decision in *United States v. Davis*, is wholly inapplicable.[1] *See United States v. Nwankwo*, No. 12 Cr. 31 (VM), 2019 WL 4743823 at *1 (S.D.N.Y. Sept. 17, 2019) ("In <u>United States v. Davis</u>, the Supreme Court held that the term 'crime of violence' is unconstitutionally vague when defined to cover a felony 'that by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense.' <u>See</u> 139 S. Ct. at 2324, 2336. This holding does not affect Nwankwo's sentence, because Section 2D1.1(b)(1) does not use or otherwise rely upon the term 'crime of violence.'").

---

[1]   Indeed, defendants convicted of Section 924(c) violations may not, as a matter of law, receive the two-level enhancement under U.S.S.G. § 2D1.1(b)(1). *See* U.S.S.G. § 2K2.4 Application Note 4 ("If a sentence under this guideline is imposed in conjunction with a sentence for an underlying offense, do not apply any specific offense characteristic for possession, brandishing, use, or discharge of an explosive or firearm when determine the sentence for the underlying offense.") In other words, the only reason why the two-level enhancement was appropriate here is *because* the defendant was *not* convicted of a Section 924(c) offense.

Accordingly, despite the defendant's Supplemental Submission, neither the facts nor the law have changed in the defendant's favor and, as a result, the defendant is not entitled to the relief he seeks, and his motion should be denied.

Respectfully submitted,

GEOFFREY S. BERMAN
United States Attorney

by:    /s/ Christopher J. Clore
Christopher J. Clore
Assistant United States Attorney
(212) 637-1063

cc:    Defendant Dante McNair (*by mail*)

Mr. McNair's application is denied.
He was not ~~charged of~~ convicted of
a § 924(c) violation. Therefore, Davis
does not apply.

So Ordered.

MK

1/13/20

The Clerk of the Court is directed to
mail a copy of this Order to the Plaintiff
Defendant

1   UNITED STATES DISTRICT COURT

2   SOUTHERN DISTRICT OF NEW YORK
    ------------------------------------x
3
    UNITED STATES OF AMERICA,
4
                        Plaintiff,
5
          v.                                    16 CR 666
6                                               SENTENCING
    DANTE McNAIR,
7
                        Defendant.
8
    ------------------------------------x
9

10                              United States Courthouse
                                White Plains, New York
11
                                February 6, 2018
12

13  B e f o r e:

14                              HONORABLE KENNETH M. KARAS,
                                DISTRICT COURT JUDGE
15
    A P P E A R A N C E S:
16
    GEOFFREY S. BERMAN
17            United States Attorney for the
              Southern District of New York
18  CHRISTOPHER CLORE
    Assistant United States Attorney
19

20
    THEODORE GREEN
21  Attorney for Defendant

22

23

24

25

1                    P R O C E E D I N G

2             THE DEPUTY CLERK:  All rise.  The Honorable Kenneth

3   M. Karas presiding.  United States of America versus Dante

4   McNair, 16 CR 666.

5             Counsel, please state your appearances.

6             MR. CLORE:  Good morning, your Honor.  Christopher

7   Clore for the government.

8             THE COURT:  Good morning, Mr. Clore.

9             MR. GREEN:  Yes.  Good morning, your Honor.  Theodore

10  Green for Dante McNair.  Dante McNair is present with me, as

11  well.

12            THE COURT:  All right.  Good morning to you both.

13  Please be seated.  I was wondering what you were doing at the

14  back table, Mr. Green.

15            MR. GREEN:  Yeah, we were have a little conference.

16            THE COURT:  Okay.  Fair enough.  All right.  So we're

17  here for Mr. McNair's sentence.

18            I've read the following and counsel will let me know

19  if I've omitted something.

20            The presentence report I've read was last revised on

21  January 3rd of this year.  Is that the most recent report?

22            MR. CLORE:  I believe so.  Yes, your Honor.

23            MR. GREEN:  Yes, your Honor.

24            THE COURT:  All right.  And then, Mr. Green, I've

25  read two submissions from you; one filed January 19, which is

1   your sentencing memorandum and then a bunch of attached

2   letters; and then a supplemental memorandum, which has two

3   additional letters.  This was filed on February 2nd.

4           Is there anything else I should have read on

5   Mr. McNair's behalf?

6           MR. GREEN:  No, there is not, Judge.

7           THE COURT:  And, Mr. Clore, I read the government's

8   submission that was filed January 25.  Is there anything else I

9   should have read on behalf of the government?

10          MR. CLORE:  No, your Honor.

11          THE COURT:  Mr. Green, have you had enough time to go

12  over the presentence report with Mr. McNair?

13          MR. GREEN:  Yes, I have, your Honor.

14          THE COURT:  Are there any objections other than the

15  guidelines?

16          MR. GREEN:  Yeah, other than the guidelines.

17          THE COURT:  Which government has said it's going to

18  stick to its agreement.

19          MR. GREEN:  Yes, they are.

20          THE COURT:  Is this a function of the rap sheet

21  conundrum?

22          MR. CLORE:  It is.

23          THE COURT:  Well, you-all had one rap sheet and I

24  thought we fixed that problem.  Why have we not -- and this

25  isn't your fault, Mr. Clore, but I thought this was a problem

1   that was going to get fixed so that Mr. McNair and people like

2   him aren't caught off guard when they think they've come to an

3   agreement and then they get ambushed by being told, "Oh, no,

4   your guideline range is higher."   This is intolerable.

5           MR. GREEN:  Well, I'm not sure if this particular one

6   was the rap sheet, itself.  It had to do with the -- I think it

7   had to do with when his probation terminated earlier and

8   whether that --

9           THE COURT:  But is that something that comes from the

10  rap sheet?

11          MR. GREEN:  Yeah, I think it is in the rap sheet.

12  I'm not sure.  It depends on -- it may be --

13          THE COURT:  I mean, and if even one person could have

14  two different rap sheets and have -- and basically has two

15  different criminal histories is perplexing.

16          MR. GREEN:  I have had past cases where the probation

17  department has a double secret rap sheet that I don't have.

18          THE COURT:  Right.

19          MR. GREEN:  That has created problems, true.

20          THE COURT:  Right.  So you get one and the one that

21  they use is the same one I thought that pretrial had.  So if

22  there's a bail hearing, pretrial won't let you keep it.

23          MR. GREEN:  No, I've learned to take detailed notes

24  from the pretrial.

25          THE COURT:  I know.  But it's not the same as having

5

```
 1  the same sheet.  You've got to talk to the powers that be,
 2  Mr. Clore, because this isn't fair.  Because it never goes the
 3  other way.  It never -- oh -- it turns out that your criminal
 4  history is lower.  It always is the other way.  And if I'm
 5  Mr. McNair, I say, okay, this is the most important decision of
 6  my life, here is all the data I need to make that decision.  He
 7  assumes the data is accurate and it's not, you know, it's just
 8  not fair.
 9              MR. CLORE:  I agree.
10              THE COURT:  All right.  Any other objections,
11  Mr. Green?
12              MR. GREEN:  No, your Honor.
13              THE COURT:  Okay.  Mr. Clore, have you reviewed the
14  report?
15              MR. CLORE:  I have, your Honor.
16              THE COURT:  Any objections on the government's
17  behalf?
18              MR. CLORE:  No, your Honor, other than the
19  guidelines.
20              THE COURT:  Okay.  And by the way, I've got no
21  problem with the children in the back.  It's all good.
22              Mr. Green, as usual, the floor is yours to start.
23              MR. GREEN:  Yes, your Honor.  When any lawyer has a
24  client who gets bail on a case like this and the thought is
25  that there's some inevitability that you may actually have to
```

1   go to prison, I mean, you're always asked, well, is it -- I

2   mean, is he better off collecting jail time instead of being

3   out all this time?  And I always feel he is better off.

4        And one reason is that it gives the -- it doesn't

5   always work out, but one reason is that it gives the defendant,

6   the client, an opportunity to show what kind of a person he is

7   by the way he deals with pretrial supervision.

8        In Mr. McNair's case, I think a lot of the really

9   good qualities in him that are -- didn't just emerge after he

10  was arrested, but have always been part of him, came to the

11  forefront.  The really bad mistakes that he made -- that he's

12  made kind of receded to the background, at least, in terms of

13  what was running his life.

14       Without any formal drug treatment, he basically went

15  cold turkey on cocaine, which was a very damaging and expensive

16  habit that he had had for too long.  After I think maybe about

17  eight weeks or so he found a steady job that I detail in my

18  presentencing memorandum.  He'd work a night shift at a hotel,

19  he'd have a lot of responsibility.  I mean, he was basically,

20  you know, the guy there and overnight.  He was given a lot of

21  trust.  He showed that he can be a very responsible employee.

22       I mean, there's -- you know, given what we know --

23  given the charges that he's pleaded guilty to and given what,

24  you know, we've been able to see about the way that he's fully

25  capable of conducting himself when he puts his mind to it, it's

7

1   really almost a mystery that he was involved in such a serious

2   offense.  But I think the way that he's dealt with that, which

3   is to certainly not be in denial about it and to try and just

4   focus on being, you know, the most -- the best person he can to

5   his family and those around him, you know, he's still a

6   relatively young man, he has a young family, he has two young

7   children, a boy and -- an infant boy and a girl that he is very

8   much devoted to.

9          He has the support of a large family and, in fact, I

10  think all of his immediate family is here now.  He's got four

11  of his sisters.  Their names are Dasha, Desari, Destiny, and

12  Dominique, which I guess, along with Dante, there's a pattern

13  there.

14          THE COURT:  You're quick.

15          MR. GREEN:  I know.  And Mr. McNair's father, Robert,

16  is here, as well as his mother, Harriet.  I mean, they've been

17  separated for some time, but they -- one thing that they agree

18  on is that they're very supportive of Dante at this time.  And,

19  you know, I mean, in many respects growing up, Mr. McNair was

20  just a -- you know, an American kid.  I mean, he had his

21  problems, he wasn't a great student, but he was a very good

22  athlete in school.  He's a very personable guy.

23          He dropped out of school, but he quickly earned a

24  GED.  He's had various jobs and done well in all of them.  And

25  it really goes to a critical 3553(a) factor, which is specific

1    deterrence.  And I think in Mr. McNair's case, the time that he

2    could have spent collecting jail time towards any inevitable

3    sentence, was spent, I think, building a lot of credibility on

4    the issue of whether he's well on the road to reform and

5    rehabilitation.  And I think the answer to that is certainly

6    yes.

7            And that is an important factor here.  And Mr. McNair

8    has also shown that he is, you know -- as much as he recognizes

9    that the offense that he committed was not good for his

10   community, he's not somebody without the capacity to be

11   involved in his community in a positive way.  And he

12   demonstrated that, for example, by his work in the Pop Warner

13   football league where he served as -- on the coaching staff.

14           I know a little bit about that program because my son

15   played Pop Warner football here in Westchester.  And it's a

16   really -- it's an excellent program.  And my memory is that the

17   coaches were a terrific bunch of guys and they really

18   sacrificed a lot of their time to do it.

19           And Mr. McNair strikes me as the kind of guy who

20   would probably be a good coach.  I mean, just because of his

21   presence and the way that he's -- he just strikes me as a very

22   poised individual.  And it's just a -- you know, it's hard to

23   reconcile it with the offense conduct.  I think a good deal of

24   it is explained by this substance abuse problem that he got

25   into as he moved into his 20s.

1        But that's -- I can't say that that's the only

2    explanation to this -- for the offense conduct.  But he's --

3    one thing is that he's not in denial about it.  He's not

4    minimizing it and he came in -- you know, he walked in here

5    today knowing full well that he was facing an inevitable prison

6    sentence.

7        Now, we are requesting, along with the probation

8    department, a recommendation that the Court do allow him to

9    self-surrender.  I think that could well affect things such as

10   his security classification, which, in turn, could affect what

11   kind of facility he's in, what kind of opportunities are

12   available in that facility in terms of vocational or continuing

13   his education.  You know, I don't have a crystal ball as to

14   what the Bureau of Prisons will do, but that's one

15   consideration.  I think he would also like to, you know, quit

16   his job with some reasonable notice and then perhaps not -- you

17   know, put himself in good stead in that situation.

18       So, you know, we think that he's a good candidate for

19   self-surrender, as well.

20       THE COURT:  Thank you, Mr. Green.

21       Mr. Clore?

22       MR. CLORE:  To begin, first with respect to

23   self-surrender, the government has no objection to Mr. McNair

24   self-surrendering.  It's our understanding that he's had no

25   issues with pretrial services that we're aware of, so the

1  government would have no objection to that.

2          With respect to the sentencing, government points out

3  we're seeking a guideline sentence somewhere between 87 and 108

4  months.  In this case, it's the government's view that a

5  sentence in that range would be appropriate based on the nature

6  of the incident offense, the individual characteristics of the

7  defendant, as well as the need to deter future misconduct,

8  promote respect for the law, and ensure the public safety from

9  future crimes the defendant might commit.

10          Most of the government's position is laid out in our

11  submission, but I just wanted to make two points:

12          One, with respect to the crime that this defendant

13  committed.  He committed crimes knowing that they would affect

14  people and he did so, like his co-defendants, purely for

15  profit.  And that's no surprise because drug dealing

16  necessarily requires a certain level of selfishness.  You have

17  to put profit over other people's well-being.  And this

18  defendant did just that.

19          But what's worse, is that he did so despite the fact

20  that he has personally struggled with addiction himself.

21  However, to be sure, this defendant is not an individual who

22  was merely selling cocaine in order to feed his own drug habit.

23  This was a profitable organization that was relatively

24  organized.  And the fact that this defendant also suffered from

25  addiction is something that the Court should certainly

1   consider, but it is not why he engaged in this conduct.  It's

2   the government's position that he did so for money, despite the

3   fact that it negatively impacted Poukeepsie, including the

4   users as well as their family members.

5          With respect to the defendant, again, in terms of his

6   criminal history, the government notes that this defendant does

7   not have a lengthy criminal history, but it's important to

8   point out that, again, like this defendant, as well as his

9   co-conspirators, they were far from street dealers, street

10  dealers who would typically be exposed to investigative

11  techniques employed by local law enforcement like physical

12  surveillance, controlled buys, and things like that.

13         Here, the fact that this defendant doesn't have a

14  lengthy criminal history, in the government's opinion, speaks

15  more to his -- the type of dealer he was.  He was a

16  distributor.  And it also speaks to how successful the

17  organization was.

18         With respect to potential future drug dealers, the

19  government believes that a guideline sentence here is necessary

20  to deter them from engaging in illegal, albeit, profitable

21  conduct like the defendant has.  A sentence within the

22  guidelines range will send a clear message to others that this

23  conduct will not be tolerated and that the government will mete

24  out significant punishment to those who sell narcotics anyway.

25         That said, the government respectfully submits that a

1   sentence within the guideline range of 87 to 108 months

2   imprisonment will be sufficient here, but not greater than

3   necessary to punish Mr. McNair for the serious crimes he's

4   committed, to hopefully instill in him a respect for the law,

5   law enforcement, and innocent law-abiding citizens affected by

6   his criminal conduct, and to deter him from being enticed by

7   drug profits and committing future crimes, and to protect the

8   public from any future crimes he might commit.

9           With that, unless your Honor has any additional

10  questions.

11          THE COURT:  I have no other questions.  Thank you,

12  Mr. Clore.

13          MR. CLORE:  Thank you.

14          THE COURT:  Any other questions, Mr. Green, before we

15  give Mr. McNair the opportunity for the last word?

16          MR. GREEN:  No, your Honor.

17          THE COURT:  Okay.  Mr. McNair, is there anything

18  you'd like to say before the Court imposes sentence?

19          THE DEFENDANT:  No, your Honor.

20          THE COURT:  All right.  The Court's task is to

21  determine what sentence is sufficient but no more than

22  necessary to achieve the goals of the sentencing laws as they

23  apply to Mr. McNair and to his case.

24          To do that, I have considered, as required, all the

25  factors set forth in 18 U.S.C. Section 3553(a).  In doing that,

1    I have carefully considered the written submissions from the

2    parties, as well as what everybody has had to say here today.

3            Now, the starting point, we're told by higher courts,

4    is what the guideline calculation yields.  The calculation is

5    set forth with some objections at paragraphs 43 to 57 of the

6    presentence report.  The base offense level is 30.  That's

7    because the offense conduct involved between 5 and 15 kilograms

8    of cocaine.  That's pursuant to the drug-quantity table at

9    Section 2D1.1(c)(5).

10           Mr. McNair possessed at least one firearm in

11   connection with the charge of narcotics conspiracy.  So two

12   levels are added pursuant to Section 2D1.1(b)(1).  This adjusts

13   the offense level to 32, but then three points come off because

14   of Mr. McNair's acceptance of responsibility, as reflected in

15   his timely guilty plea.  That's pursuant to Sections 3E1.1(a)

16   and (b).  This yields a total offense level of 29.

17           The criminal history is calculated as 2 because

18   Mr. McNair has -- is deemed to have three criminal history

19   points:  One, from the judgment of three years' probation in

20   July of 2010 in connection with a seventh degree CPCS charge in

21   Newburgh Town Court.

22           And then because -- the probation's view is that

23   because the incident offense occurred while Mr. McNair was

24   still serving a probation period, two points are added pursuant

25   to Section 4A1.1(d).

1          So I suppose if one were to be a purist, then it

2     would have to be a total offense level 29, Criminal History

3     Category II, which would yield a guideline range of 97 to 121

4     months.  And I am a purist.  But I'm also a purist in the sense

5     that the parties bargained for a different criminal history

6     based on a different rap sheet.  And I think equitable

7     considerations merit the enforcement of the bargain.

8          So it would be a total offense level of 29 and a

9     Criminal History Category of I, which would yield a guideline

10    range of 87 to 108.  If the government wants to whine to the

11    Second Circuit, then they can explain to the Second Circuit how

12    it is that they're using two different rap sheets.  Again,

13    Mr. Clore, that's not directed at you, but your office has got

14    to fix this.  So I'm going to go with that guideline range.

15    All right.  So that's the math, as adjusted.

16          In terms of the other 3553(a) factors starting with

17    Mr. McNair, this is a very tragic case.  When you look at the

18    personal sort of history section of the presentence report, you

19    see a story that is a little different than some of the other

20    cases of this kind.

21          You know, Mr. McNair's sisters are all -- they're

22    here, but they're also doing really well in life.  This is not

23    a story of an individual who had, you know, no family support,

24    has a broken home, as evidenced by -- sometimes, Mr. Green,

25    you've represented clients where the sisters and brothers are

15

 1    all in trouble.  And they, too, have sort of broken lives.  And

 2    that's not this story.

 3             There's no question that Mr. McNair has the

 4    wherewithal and the ability to go down a different path.  And I

 5    agree with you, Mr. Green, you know, from your perspective,

 6    it's always a -- it's always a question about, you know, does a

 7    client who faces a mandatory minimum, is the client better

 8    served by starting to serve the jail time or even there's a

 9    possibility of "time served."  There's no mandatory minimum.

10    Plus, there's no risk of the person screwing up while on bail,

11    which always seems to magnify the problems at sentencing.

12             And I can see that.  And you know your clients better

13    than anybody.  And there may be some clients where to yourself

14    you say, you know what, maybe the judge's remand thing here is

15    for the best; I did my best.

16             But I think Mr. McNair wisely used the time to prove

17    to himself, more importantly than anything else, that he could

18    go on the different path.  You know, as Mr. Green has said, you

19    know, he cleaned up his act literally in terms of some of his

20    addiction issues, but also in terms of putting structure in his

21    life and getting his priorities straight.

22             Now, there are people, Mr. McNair, who can do that

23    for a period of time between plea and sentence with a view

24    towards fooling the district judge.  Sometimes it doesn't work

25    because even though that's the plan, they can't execute the

1    plan.  And sometimes it works and sometimes it's genuine.

2              I think it's all about -- that's why I said the most

3    important thing is what you prove to yourself.  It's all about

4    confidence.  It's all about believing that you can turn the

5    page.  Recidivism is where the person gives in to how hard it

6    is to turn the page.

7              We're all creatures of habit.  It's easy to do

8    tomorrow what we did yesterday.  It's a lot harder to do

9    something different, right?  And people who, you know,

10   whether -- there's people that are -- "I'm overweight, I've got

11   to stop eating junk food and I've got to start exercising" and

12   they wake up the next morning and they get ready to do some

13   push-ups, they're like, "Screw that, I'm going back to bed."

14   As simple as that.

15             Yours is magnified.  You need to do major push-ups in

16   life, not just literally, but you need to change your routine.

17   You need to go back to hanging out with the right people in

18   your life.  You need to make sure that you understand that

19   every day the addiction could get the better of you, because

20   the minute you let your guard down is the minutes it will get

21   the better of you.

22             And I think that you've used the time to prove to

23   yourself that you can do these things.  And that's important

24   because when you're done serving your sentence, you need to

25   hold on to that and tell yourself that you've got to do that.

1  You've got to do it for your kids, you've got to do it for

2  yourself, you've got to do it for your family.

3        And understand that not only should you think

4  positively about this, but if you want to think existentially

5  about it, here's the bottom line:  You go back to anything like

6  this again, it's a mandatory 20.  You could be looking at a

7  mandatory 20, and Mr. Green would correct me if I was wrong.

8  He's knows I'm not.  You do B1 in quantity and it's your second

9  federal felony conviction, then the Mr. Cloreses of the world,

10  without having to make a motion, without having to get

11  permission of the judge or the consent or even if Mr. Green

12  jumped up and down and said, "Don't do it," all he's got to do

13  is file a document called "A Prior Felony Information," which

14  states "This person was convicted of a federal felony drug

15  conviction on this date," and that changes the mandatory

16  minimum to 20 years and there's nothing that can be done about

17  it.

18        You've probably heard of the safety valve thing.  You

19  wouldn't be eligible for safety valve.  And the judge could

20  scream and yell at Mr. Clore, the judge could do nothing about

21  it.  If you were convicted, you would have to be sentenced to

22  at least 20 years in jail.  That's the reality.

23        And, you know, there's been some whispers here and

24  there about how Congress is going to change that.  Those winds

25  aren't blowing in that direction right now at all.  So if for

1  no other reason, just try to imagine -- just close your eyes

2  and try to imagine some time from now after you get out, having

3  some judge say, "I have no choice, Mr. McNair, you have to go

4  to jail for 20 years," and think about how everybody in the

5  back, how they would age in those 20 years.  Think about a kid

6  who goes from five to 25.  You missed the chance to coach Pop

7  Warner and any kind of football.  You missed the chance to see

8  proms, you missed the chance to see the Tooth Fairy, you missed

9  the chance to ride -- see them ride a bike.  You missed the

10  whole thing, your opportunity to make a contribution to better

11  their lives.  That's -- you don't want that.

12          So I'm trying to give you a couple of different

13  survival mechanisms:  One, is to think positively.  You can

14  make a difference.  You can make people around you, your loved

15  ones, happier, better off.  And if that doesn't motivate you,

16  then just think about being in jail in your 50s or your 60s.

17  And then what, right?  So self-survival.

18          And there are people who, at sentencing, they say,

19  "I'm going to do it, I'm going to do it, I'm going to do it."

20  Deep down they don't think they can.  They don't -- they

21  haven't developed the confidence to do it.  You've done that.

22          So it's unfortunate there's this break.  You know,

23  you're going to go from having really gotten your act together

24  to go to jail, but that's what you can hold on to.  Yeah -- and

25  I'm going to let you self-surrender.  And I think that

1   post-arrest rehabilitation needs to be rewarded, assuming it's

2   genuine.  The faker's often like "Look at me, I did some

3   community service."  Oh, come on, you know.  Beating the

4   addiction is where this starts and ends, right?  And beating

5   that means hanging out with the right people.  That's who you

6   hang out with.

7           All right.  So some of the other factors:

8           The ones that focus on the offense conduct.  You

9   know, Mr. Clore talked about those.  You know, the need to

10  impose a sentence that promotes respect for the law, provides

11  for a just punishment, accounts for the seriousness of the

12  criminal conduct.

13          This was serious stuff.  This was not a couple of

14  dime bags being sold.  This was kilo quantities distribution.

15  This was an organization.  This, you know, fed addiction en

16  masse and there was a whole ripple effect that we don't see in

17  the courtroom.  What we don't have in the courtroom is the

18  families of people whose addictions have affected them.  Those

19  addictions were furthered by your sort of commercializing their

20  addiction.  They're out there, right?  You know that.  You know

21  that from experience.  It's horrible.

22          And Mr. Clore is right:  It's selfish, it's greedy,

23  it's wrong.  And it affects communities because where there is

24  this distribution, there is always the risk of violence and

25  then there's always the perception of the parent who has the

1    five-year old that says, "My kid is going to have to walk

2    through that neighborhood where I know people are selling that

3    stuff."  And that can't be quantified, right?  And those

4    parents aren't here.  Those voices aren't being heard today,

5    but they're out there.  So that has to be taken into

6    consideration.

7         General and specific deterrence:

8         General deterrence speaks for itself.  Obviously the

9    idea is people need to understand that there's a serious price

10   to be paid for serious criminal conduct.

11        Specific deterrence, there's some risk.  There's some

12   criminal history.  There's -- it's not as bad as others in this

13   case, and I think your post-arrest rehabilitation helps the

14   one -- some of the concern about recidivism on your part.  But

15   also just keep in mind 20 years.  Keep telling yourself 20

16   years.  I'm not doing 20 more years in federal prison.  That's

17   the minimum, by the way.  And if there's a gun involved, God

18   help you.  Because then there's a mandatory consecutive

19   depending on what the aggravator is.  It could be five, it

20   could be seven, it could be 25.  These are harsh laws.  But the

21   point is to try to deter people from doing this stuff.

22        The need to avoid unwarranted disparity is always an

23   issue, and, of course, it's relevant in this case because

24   there's so many people in this case.  And so you don't want

25   people who are more culpable getting less time, all things

being equal, including their role in the offense, their
criminal history.  So I've considered that, as well.

So here's where I come out of this.  I actually think
that a sentence within the guideline range is a little bit more
than is necessary because I think it underrepresents your
post-arrest rehabilitation, which, as I said, I think really
goes right to the heart of the recidivism issue and it -- to
me, that's the ballgame.  You know, you're looking at 60 months
just because.  That's a long time.  And I think that, by
itself, you know, helps address some of the other concerns, the
general deterrence concerns, the need to impose a sentence that
reflects the seriousness of the criminal conduct.

Because the other thing Mr. Clore mentions, he may
have mentioned this in his submission.  This is not a one-off
thing.  Somebody sells five kilos one time, in my view, that's
not as bad as somebody who basically makes it their living.
They're part of the scheme.  Because that involves some of the
externalities that I was talking about in terms of the
community impact.  So that does trouble me.

There was a gun involved.  That troubles me.  But as
I said, I think just sort of blindly saying, "Yeah, guideline
sentence," I think doesn't really tailor the sentence to you
and the things that you've done.

So when I add it all up, when I consider all of the
3553(a) factors, it's the judgment of the Court that Mr. McNair

1    be sentenced to the custody of the attorney general for a

2    period of 66 months, to be followed by four years of supervised

3    release.   I'm not going to impose a fine.   You can't afford

4    one.   There's no restitution.

5              Forfeiture, Mr. Clore?

6              MR. CLORE:   Yes, your Honor.   The government has --

7    the parties have agreed upon a forfeiture amount of $85,000.

8              THE COURT:   $85,000?

9              MR. CLORE:   That's correct, your Honor.

10             THE COURT:   So $85,000, I have to orally announce

11   that I've done that.

12             The special assessment is $100, as it must be.

13             The conditions of supervised release, please listen

14   carefully, Mr. McNair, because this is the ballgame for you.

15             You're not to commit another federal, state, or local

16   crime.   You're not to unlawfully possess a controlled substance

17   or firearm or destructive device and you're to cooperate in the

18   collection of DNA.

19             You're also to refrain from the unlawful use of a

20   controlled substance.   You're to submit to one drug test within

21   15 days of release from imprisonment and at least two periodic

22   tests thereafter, as determined by the probation officer.

23             The key there will be who you hang out with, right?

24   And because if you hang out with the wrong people, it is

25   inevitable you will violate one of these conditions.   It just

1    is.  You hang out with the right people, then there won't be

2    the temptation.  And there will be temptation.  Of course there

3    will be.  If you think there won't be, then you're done.  You

4    need to be cognizant of it and ready for it.

5         The standard conditions of supervision, 1 to 13 are

6    imposed.  Those will be explained to you later.  The only added

7    conditions is that -- are that you are to submit your person,

8    residence, place of business, vehicle, any other property,

9    including computers, electronic communications, data storage

10   devices and the like, under your control to a search on the

11   basis that the probation officer has reasonable suspicion that

12   contraband or evidence of a violation of conditions of release

13   may be found.

14        The search has to be conducted at a reasonable time

15   and in a reasonable manner.  But failure to submit to such a

16   search may, itself, be grounds for revocation.

17        You're to inform any others that the premises may be

18   subject to search pursuant to this condition.  You're also to

19   provide the probation officer with access to any requested

20   financial information.  You may be supervised in the district

21   of your residence.

22        Are there open counts, Mr. Clore?

23        MR. CLORE:  There are.  The government moves to

24   dismiss Count Two, your Honor.

25        THE COURT:  Okay.  That's granted.

1          To the extent you haven't waived then, Mr. McNair,

2    you have a right to appeal this sentence.  You have to file a

3    notice of appeal within 14 days of when this judgment is

4    entered.

5          How much time does Mr. McNair need to surrender,

6    Mr. Green?

7          MR. GREEN:  Well, I'm not sure how long it takes for

8    a designation.  In other words, is that the issue?

9          THE COURT:  If we knew the answer to that, we'd all

10   be better off in life.  Is 90 days enough time?  I would think

11   that would be --

12         MR. GREEN:  Yes, sure.  I think we'll have -- we'll

13   know by then anyway.

14         THE COURT:  So we'll say that by May 6 -- no, May 4.

15   The 6th is a Sunday.  May 4th, Mr. McNair is to report to the

16   designated facility.

17         I'm duty bound, Mr. McNair, to tell you that failure

18   to do that, itself, is a crime.  And I didn't say that because

19   I'm worried; I'm just -- I have to let you know that.

20         MR. GREEN:  Is there a certain time of day?

21         THE COURT:  Noon.

22         MR. GREEN:  Yeah.

23         THE COURT:  So 66 months is a long time, Mr. McNair.

24   I understand that.  When you were charged in this case, you

25   could have been facing a mandatory 10.  The guideline range

25

1  that the probation department said applied had the low end of

2  97 months or 90-something months.  What was it?  97 months.

3  The guideline range that you agreed to is 87 at the low end.

4          So I realize this is not the mandatory minimum, but

5  on the other hand, this is way below what you could have gotten

6  and I think you earned that break.

7          You have, obviously, the benefit of a very good

8  lawyer who put you in a position to be outside the 10-year

9  mandatory minimum and a reasonable prosecutor.

10         Now you got to earn that the rest of your life

11  because the consequences, as I said, are just unimaginable.  If

12  you violate supervised release, you go back to jail.  If you

13  sell drugs anywhere close to this quantity, you're looking at

14  maybe a mandatory 20-plus.  You don't want to go there.  You're

15  a young person, you've got your whole family supporting you,

16  you've got your future ahead of you and you've taken the time

17  between arrest and today to prove you can do all that you need

18  to do to never come back here against your will again.  So now

19  you've got to go do it.  Okay.

20         Did I do the appeal waiver, Angie?

21         To the extent you haven't waived it -- I did do it.

22         All right.  Anything else, Mr. Green?

23         Designation nearest to the New York metropolitan area

24  as possible?

25         MR. GREEN:  Yes, I am requesting that.

1          THE COURT:  Okay.  I'll make that recommendation.

2    That's all I can do is make the recommendation.

3          MR. GREEN:  Your Honor, I would also ask for a

4    recommendation that Mr. McNair be provided with any substance

5    abuse treatment in prison that he seeks.

6          THE COURT:  Okay.  I'll make the recommendation.

7          MR. GREEN:  Yes, your Honor.

8          THE COURT:  Anything else, Mr. Clore?

9          MR. CLORE:  No, your Honor.

10         THE COURT:  All right.  Thank you, Mr. Clore.

11    Anything else, Mr. Green?

12         MR. GREEN:  Nothing, your Honor.

13         THE COURT:  All right.  Thank you.

14    Mr. McNair, good luck.

15         THE DEFENDANT:  Thank you.

16         (Proceedings concluded)

17

18

19

20

21

22

23

24

25